UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| JEREMY WAYNE DUKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01177-JDB-cgc |
| | ) | |
| JAMES MCVEY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER TO MODIFY THE DOCKET, DENYING APPOINTMENT OF COUNSEL,
PARTIALLY DISMISSING COMPLAINT, AND DIRECTING THAT
PROCESS BE ISSUED AND SERVED ON THE REMAINING DEFENDANT

On September 11, 2017, Plaintiff, Jeremy Wayne Duke, who was incarcerated at the Morgan County Correctional Complex in Wartburg, Tennessee,[1] filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion to proceed *in forma pauperis*. (Docket Entry ("D.E.") 1, 2.) The complaint concerns an incident that occurred while Plaintiff was incarcerated at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee. (D.E. 1 at PageID 1.) The Court issued an order on September 12, 2017, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)–(b). (D.E. 4.) The Clerk shall record the Defendants as James McVey, Captain at WCF; Monterious Bradford, an inmate at WCF; and CoreCivic, a private corporation that owns and operates WCF for the Tennessee Department of Correction ("TDOC").

---

[1] According to state records, Plaintiff is currently in custody at the Northwest Correctional Complex in Tiptonville, Tennessee. The Clerk is DIRECTED to modify the docket to reflect Plaintiff's current place of confinement.

The inmate alleges that on June 28, 2017, he was showering while the prison was on lockdown, during which—pursuant to WCF policy—only two cellmates could use the showers at a time. (D.E. 1 at PageID 2.) Despite that policy, fellow inmate Monterious Bradford (who was not housed in the same cell as Plaintiff) entered the shower and began talking to Duke about a cellphone that Bradford had hidden near the showers and which someone had stolen. (*Id.*) Bradford threatened that Plaintiff and his roommate would be forced to pay Bradford for the stolen phone "with sexual favors and acts." (*Id.*) Plaintiff immediately left the shower but heard Bradford call after him that he was "going to get" him. (*Id.*) Bradford was a known gang member with a history of sexual predation and had allegedly made previous threats against Plaintiff's cellmate. (*Id.* at PageID 3.) Duke and his cellmate therefore decided to advise McVey about the new threat, which they did that evening around 11:00pm. (*Id.*) McVey told Plaintiff that WCF was on "investigation lockdown," and that Duke "had [McVey's] word" that he and his cellmate would be safe through the morning. (*Id.*)

Plaintiff returned to the showers on the next day. (*Id.*) Bradford again appeared, brandished a makeshift knife, and threatened to stab Duke unless he performed oral sex on Bradford. (*Id.*) Plaintiff complied while Bradford put the knife to his neck. (*Id.* at PageID 4.) Bradford threatened that if Duke reported the incident, he would be "smashed or stuck" by other gang members. (*Id.*) That night Plaintiff reported the incident to McVey and complained that it would not have happened if McVey had granted his request the previous day to be placed in protective custody. (*Id.*) McVey allegedly told Duke to return to his unit and charged Plaintiff with "punitive punishment" for seeking protection. (*Id.*) Plaintiff was put into protective housing later that evening, from where he grieved the incident. (*Id.*)

The inmate seeks "protection and future safety that this will not happen again to[] anyone else who ask for help." (*Id.* at PageID 5.) He also seeks removal from his Tennessee Department of Correction (TDOC) record of the fine for his punitive punishment, transfer to another facility, and $500,000 in damages. (*Id.* at PageID 5–6.)

## SCREENING STANDARD

The Court is required to screen prisoner complaints and to dismiss the complaint, or any portion thereof, if it—

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the assertions "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory contentions "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## ANALYSIS

42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Plaintiff does not specify whether he is suing Defendants in their official or individual capacities. The Sixth Circuit requires a plaintiff to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials." *Wells*, 891 F.2d at 592. Ordinarily, "[a]bsent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). Duke, however, seeks damages against the Defendants and alleges personal involvement by McVey and Bradford. The Court will

4

therefore presume that he is suing those defendants in their individual capacities and CoreCivic in its official capacity.

The inmate's allegations against McVey amount to a claim for deliberate indifference, which arises under the Eighth Amendment's prohibition against cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component of an Eighth Amendment claim, a prisoner "must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle*, 429 at U.S. 292). The subjective component requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302–03. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

Plaintiff maintains that he told McVey after the first threat what Bradford had said to him and his cellmate in the shower. McVey assured both men they would be safe until morning because of the lockdown. However, according to Duke, Bradford should not have been in the shower at the same time as Plaintiff and his cellmate pursuant to prison procedure for showers during lockdowns. (D.E. 1 at PageID 2.) The lockdown procedure that McVey assured Duke would keep him safe had therefore already failed to protect him. Moreover, Plaintiff did not need protection for the remainder of the evening. He reported the threat to McVey around 11:00pm, and the threat to Duke was made during the daytime in the showers, where Bradford had approached and threatened Plaintiff despite the lockdown shower policy. McVey's refusal to assist Duke despite

5

the first threat and breach of lockdown procedure could be described as more than mere negligence. Plaintiff's complaint therefore sufficiently alleges that McVey knew of and disregarded the risk to his safety. For the purposes of screening, the inmate has stated a claim of deliberate indifference in violation of the Eighth Amendment against McVey in his individual capacity.

Duke, however, cannot sue Bradford under § 1983. "A § 1983 plaintiff may not sue purely private parties." *Brotherton v. Cleveland*, 173 F.3d 552, 567 (6th Cir. 1999). Thus, "[i]n order to be subject to suit under § 1983, [a] defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231–32 (6th Cir. 1997). Bradford, a fellow inmate, is not a state actor amendable to suit in this matter.

Plaintiff also fails to state a claim against CoreCivic. "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or that provide medical care or food services to prisoners. *Id.* at 748–49; *Street*, 102 F.3d at 817–18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, the inmate "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011). Duke has not alleged that a policy or custom of CoreCivic was the "moving force" behind the alleged violation of his constitutional rights.

To the extent that Plaintiff seeks assistance for other inmates, he lacks standing to assert claims on behalf of any inmate but himself. One of the three elements of standing is that "the

6

plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks, footnote and citations omitted). "In requiring a particular injury, the Court meant that the injury must affect the plaintiff in a personal and individual way." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) (internal quotation marks and citation omitted). Unless Duke suffered an actual injury, he "was not the aggrieved party, [and] he lacks standing" to sue. *Percival v. McGinnis*, 24 F. App'x 243, 246 (6th Cir. 2001).

To the extent Plaintiff seeks injunctive relief from WCF and a transfer to another facility, his claim is moot because he already has been moved to another facility. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same).

On October 5, 2017, the inmate submitted a letter to the Court that contains additional information about his case and copies of grievance forms. (D.E. 6 & 6-1.) The Court will accept the submission because he filed it before screening.

Duke also requests that the Court provide him an attorney. (D.E. 6 at PageID 32–33.) A district court is vested with broad discretion in determining whether to appoint counsel for an indigent civil litigant. *See Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). Appointment of counsel in a civil case is not a constitutional right, and courts generally do not appoint counsel in a civil case absent a showing of "exceptional circumstances." *Id.* at 605–06; *see also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) ("The key [to determining whether exceptional circumstances exist] is whether the *pro se* litigant needs help in presenting the essential

7

merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help.") The Court concludes that appointment of counsel is not warranted at this time. Plaintiff's request for appointment of counsel is therefore DENIED without prejudice.

The Court therefore DISMISSES Duke's complaint against Defendants Bradford and CoreCivic for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

It is ORDERED that the Clerk shall issue process for McVey and deliver that process to the U.S. Marshal for service. Service shall be made on McVey pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Plaintiff shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendant McVey. Duke shall make a certificate of service on every document filed. He shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[2]

Plaintiff shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED this 4th day of March 2019.

    s/ J. DANIEL BREEN
    UNITED STATES DISTRICT JUDGE

---

[2] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.